**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

DriveTime Sales and Finance Company LLC, et al.,

Plaintiffs,

v.

Drive Time Auto Sales LLC,

Defendant.

No. CV-26-00190-PHX-MTL

**ORDER**

Before the Court is Plaintiffs' DriveTime Sales and Finance Company, LLC and DriveTime Car Sales Company, LLC (collectively "DriveTime") Motion for Default Judgment (Doc. 15.)

## I.    BACKGROUND

As the Clerk of Court has entered default (Doc. 14.), the Court takes the Complaint's factual allegations as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). DriveTime is a used car retailer and finance company that sells and finances cars at 149 locations across the nation. (Doc. 1 at 3.) DriveTime, formerly known as Ugly Duckling, was renamed DriveTime in 2002. (*Id.*) DriveTime owns the DRIVETIME trademark, U.S. Reg. No. 2792416 covering "automobile financing services" and DRIVETIME trademark, U.S. Reg. No. 2792416 covering "automobile dealership service." (*Id.* 3-4) DriveTime is the third largest used car dealership in the United States, selling over 100,000 cars every year for the past ten years. (*Id.*) Defendant Drive Time Auto Sales, LLC is a used car dealership that sells cars through vehicle auctions. (*Id.* at 4.)

Defendant "advertises and sells used vehicles via the same channels of trade" as DriveTime. (*Id.*) Defendant, without DriveTime's consent, "used and continues to use the DRIVETIME Marks in connection with the sale, offering for sale, distribution, and advertising of its goods." (*Id.*)

DriveTime initiated this action, alleging federal trademark infringement under 15 U.S.C. § 1114 (Count I), federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a) (Count II), Arizona common law trademark infringement (Count III), trademark infringement under A.R.S. § 44-1451(A) (Count IV), and unfair competition in violation of the Arizona Consumer Fraud Act, A.R.S. § 44-1521 (Count V). (Doc. 1.) DriveTime served Defendant, which failed to appear or otherwise respond to the Complaint. (Doc. 15 at 4.) The Clerk of Court entered default against Defendant. (Doc. 14.) DriveTime moved for default judgment against Defendant pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Doc. 15.) The Motion for Default Judgment includes a request for attorneys' fees. (*Id.* at 9.)

## II.      MOTION FOR DEFAULT JUDGMENT

The Court has reviewed the Motion for Default Judgment and the entire record. Jurisdiction and venue are proper. The Court also finds that DriveTime has satisfied all service of process and notice requirements under the Federal Rules of Civil Procedure. DriveTime has also satisfied the conditions for the entry of default and the entry of default judgment under Rule 55(a) and (b).

The Court also considers the factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). These factors, which are to be assessed when deciding whether default judgment is appropriate, include:

> (1) The possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

(*Id.*)

The first, fourth, fifth, and sixth factors weigh in DriveTime's favor. Denying default judgment would leave DriveTime without a remedy because Defendant chose not to appear and defend this case. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The fourth factor supports default judgment because DriveTime does not seek any monetary damages. (Doc. 15 at 8.)  The fifth factor also supports default judgment because "all well-pleaded facts in the complaint are taken as true . . . [therefore] no genuine dispute of material facts would preclude granting" the motion. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Additionally, the sixth factor warrants entering default judgment because Defendant was properly served under Federal Rule of Civil Procedure 4(e)(1). (Doc. 15 at 4.) *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071-72 (D. Ariz. 2006) (finding that a defendant's failure to answer is likely not a result of excusable neglect if the defendant is served properly).

As the Federal Rules of Civil Procedure favor a decision on the merits, the seventh factor generally weighs against default judgment, but the existence of Rule 55(b) "indicates that 'this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, No. C 94-2684 THE., 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). This factor is not sufficient on its own to preclude an entry of default judgment.

The second and third *Eitel* factors, the merits of the claim and the sufficiency of the complaint, are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which [he] may recover." *Viet. Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citation modified). Since Counts I-IV are subject to an identical legal standard, the Court will assess the sufficiency of those claims first, then turn to Count V.

**A.     Counts I-IV: Trademark Infringement and Unfair Competition**

Counts I-IV may be analyzed together since federal trademark infringement claims under 15 U.S.C. § 1114 and unfair competition and false designation of origin claims under 15 U.S.C. § 1125(a) are subject to the same legal standards, *Mintz v. Subaru of Am., Inc.*,

715 F. App'x 618, 622 (9th Cir. 2017), and so are Arizona common law trademark infringement and unfair competition claims. *AAA Alarm & Sec. Inc. v. A3 Smart Home LP*, CV-21-00321-PHX-GMS, 2021 WL 3857417, at *2 (D. Ariz. Aug. 30, 2021). To prevail on Counts I-IV, DriveTime must establish "(1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1048 (9th Cir. 2025) (articulating the standard for federal trademark infringement). Since DriveTime owns two registered trademarks for DRIVETIME, (Doc. 1 at 3-4), the Court finds that it possesses a protectable ownership interest in the marks. *See Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113-14 (9th Cir. 2010) (holding that federal registration entitles plaintiff to a "strong presumption that the mark is a protectable mark".).  Having found that the first factor is met, the Court turns to the second factor, whether Defendant's use is likely to cause consumer confusion. In determining whether a consumer in the marketplace is likely to be confused as to the origin of the defendant's products, the Court considers the eight *Sleekcraft* factors:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines.

*Id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 f.2d 341, 348-49 (9th Cir. 1979)).

### 1.      Strength of the Mark

When analyzing the first factor, courts examine the mark's conceptual strength and commercial strength. *Network Automation, Inc. v. Adv. Sys. Concepts*, 638 F.3d 1137, 1149 (9th Cir. 2011). Conceptual strength classifies the mark "along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary or fanciful." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999). Although the DRIVETIME mark's conceptual strength is only suggestive, DriveTime alleges the mark's commercial strength. "[C]ommercial strength is based on

actual marketplace recognition," *Network Automation, Inc.*, 638 F.3d at 1149 (citation modified), and it may be established by "significant investment of resources to advertise the mark," *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 758 (9th Cir. 2018). DriveTime alleges it has "invested substantial time, effort, and financial resources promoting its DRIVETIME Marks," (Doc. 1 at 5), and, DriveTime's brand is "a well-known brand throughout the United States," (*Id.* at 3). The Court therefore finds that the DRIVETIME marks are commercially strong.

### 2.    Proximity of the Goods

The second factor examines the relatedness of the two products. "The proximity of goods is measured by whether the products are (1) complementary; (2) sold to the same class of purchasers, and (3) similar in use and function." *Network Automation, Inc.*, 638 F.3d at 1150 (citation omitted). DriveTime and Defendant sell the same product in the same market because Defendant is a used car dealership that "sells used vehicles in the same channels of trade" as DriveTime, (Doc. 1. at 3, 5). Thus, this factor weighs in favor of DriveTime.

### 3.    Similarity of Sight, Sound, and Meaning

The third factor weighs the similarity of the marks, which is tested based on sight, sound, and meaning. *Network Automation Inc.*, 638 at 1150 (citing *Sleekcraft Boats*, 599 F.2d at 351). "The greater the similarity of the defendant's mark to the plaintiff's mark, the greater the likelihood of confusion*." GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Here, the Court is asked to compare DriveTime's mark, "DRIVETIME," and Defendant's name "Drive Time Auto Sales LLC." (Doc. 1 at ¶ 14.) Defendant uses the same words, just separated by a space. The Court finds that the marks are similar, and thus this factor weighs in favor of DriveTime.

### 4.    Evidence of Actual Confusion

The fourth factor considers evidence of actual confusion. Although DriveTime does not attempt to show actual confusion, "[t]he failure to prove instances of actual confusion is not dispositive." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1050 (citation modified).

- 5 -

### 5. Marketing Channels

The fifth factor analyzes "whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014) (citing *Nutri/System, Inc. v. Con–Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987)). Both DriveTime and Defendant distribute and sell their products to customers purchasing cars in the used car market. (Doc. 1 at 3.) The fifth factor weighs in favor of DriveTime.

### 6. Types of Goods and Purchaser Care

The sixth factor examines "the type of good or service offered and the degree of care one would expect from the average buyer exercising ordinary caution." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 877 (9th Cir. 2014). "The likelihood of consumer confusion decreases where the consumer is sophisticated and exercises a high degree of care." *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1120 (N.D. Cal. 2010). Consumers tend to give a high degree of care in the purchasing of a car. *See AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 828 (7th Cir. 2002) ("[C]onsumers who buy or lease a vehicle that sells for more than $16,000.00 . . . are likely to use a very high degree of care . . . ."). The high degree of care exercised by the average buyer in purchasing a car weighs in favor of Defendant.

### 7. Intent

The seventh factor implicates the alleged infringer's intent. "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, the public will be deceived." *Network Automation Inc.*, 638 F.3d at 1153 (citation omitted). A defendant's knowledge that he adopted a mark confusingly similar to another's mark may be actual or constructive. *Brookfield Commc'ns, Inc.*, 174 F.3d at 1059 (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157 (9th Cir. 1963)). Moreover, a defendant's profiting off the public's confusion is evidence of intent to deceive. *See Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028–29 (9th Cir. 2004) (finding that a

defendant collecting revenue from users clicking potentially misleading ads demonstrated intent to deceive the public). The Court accepts as true DriveTime's allegation that, "despite actual knowledge of [DriveTime's] rights and demands, [Defendant] continues to infringe on [DriveTime's] DRIVETIME Marks" and has "advertised and offered its good for sale using the DRIVETIME Marks with the intention of misleading, deceiving, . . . confusing consumers[, and] trading on [DriveTime's] reputation and goodwill." (Doc. 1 at 6.) This factor weighs in favor of DriveTime.

### 8. Likelihood of Expansion

The eighth and final factor requires the Court to consider the likelihood of the parties' expansion. "Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354 (citing Restatement of Torts § 731(b) & Comment c). "[W]hen goods are closely related, any expansion is likely to result in direct competition." *Id.* DriveTime and Defendant operate in the same market and sell closely related goods—used cars—so the potential for direct competition through expansion is strong. The final factor suggests a likelihood of confusion between the marks.

On balance, the Court finds that the *Sleekcraft* factors indicate that Defendant's use of the DRIVETIME marks is likely to cause consumer confusion. As to Counts I-IV, DriveTime has presented meritorious claims, so the second and third *Eitel* factors weigh in favor of DriveTime as to those counts.

### B. Count V: Unfair Competition under Arizona Consumer Fraud Act

To prevail on Count V, raised pursuant to Arizona Consumer Fraud Act A.R.S. § 44-1521, DriveTime must show "(1) a false promise or misrepresentation made in connection with the sale or advertisement of 'merchandise', and (2) consequent and proximate injury resulting from the misrepresentation." *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016). In its motion for default judgment, DriveTime does not argue that these factors are met. (*See generally* Doc. 15.) Instead, Plaintiff recites the

standard for an unfair competition claim brought pursuant to Arizona common law. (*Id.* at 7.) But that is not the standard for Count V, which is a claim brought pursuant to A.R.S. § 44-1521. *See Stutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (engaging in a distinct inquiry as to an alleged violation of Arizona's Consumer Fraud Act as compared to "tort law claims including unfair competition"). DriveTime has not shown that Count V is meritorious, so the second and third *Eitel* factors do not weigh in favor of default judgment as to Count V.

Still, upon weighing all the *Eitel* factors, the Court finds that that it is appropriate to issue a default judgment in DriveTime's favor. The Court further finds that DriveTime has suffered an irreparable injury, that remedies available at law are inadequate, the balance of hardships favor a remedy in equity, and the public interest would not be disserved by an injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); 15 U.S.C. § 1116(a) (providing that there is "a rebuttable presumption of irreparable harm upon a finding of a violation" of infringement); *Saks & Co. v. Hill*, 843 F. Supp. 620, 625 (S.D. Cal. 1993) ("Injunctive relief is the appropriate remedy in cases of trademark infringement, dilution and unfair competition.") (internal citation omitted); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) (finding in its assessment of whether to enjoin infringing activity, that "the balance of hardships favors [DriveTime] because without an injunction, [DriveTime] will lose profits and goodwill, while an injunction will only proscribe Defendants' infringing activities"); *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633, 636 (9th Cir. 2013) ("An injunction that prevents consumer confusion in trademark cases . . . serves the public interest."). The Court will grant DriveTime's Motion for Default Judgment (Doc. 15) and grant the requested declaratory judgment and injunction.

## III. REQUEST FOR ATTORNEY'S FEES

DriveTime seeks "reasonable attorney fees and costs." (Doc. 15 at 8.) Under the Lanham Act, the Court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117. "[A] case may be deemed 'exceptional, and merit an

award of attorneys' fees under the Lanham Act, when the Defendant disregards the proceedings and does not appear." *Phillip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003). Since Defendant has disregarded these proceedings, the Court finds that this is an exceptional case that warrants an award of fees. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (upholding attorneys' fees where default judgment established defendant willfully infringed on plaintiff's trademark.)

Having determined that an award of attorneys' fees is warranted, the Court must determine an appropriate award. The Court may award only "reasonable" attorney fees. 15 U.S.C. § 1117(a). The reasonableness of the attorney fees is determined based on the "lodestar" calculation, which determines a reasonable fee by multiplying (1) "the number of hours reasonably expended on the litigation" by (2) "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)

DriveTime requests an award of $22,820.50 and includes with its motion a spreadsheet of fees and costs billed to DriveTime. (Docs. 15 at 9, 15-1 at 4.) DriveTime seeks a $450 and $500 hourly rate for two partners; a $500 hourly rate for an attorney of counsel; a $350 hourly rate for an associate; and a $250 and $165 hourly rate for two paralegals. (Doc. 15-1 at 3-4.) The Court finds these rates to be reasonable. *Accord ThermoLife Int'l LLC v. Fitness Wholesalers LLC*, No. CV-18-04189-PHX-JAT, 2020 WL 1694739, at *8 (D. Ariz. Apr. 7, 2020) (finding that hourly rates of $690 for an associate and $890 for a lead partner were reasonable); *OSN Labs, LLC v. Phoenix Energy, LLC*, No. CV-23-01188-PHX-MTL, 2024 WL 2832437 (D. Ariz. June 4, 2024) (finding that hourly rates of $410, $495, and $745 as reasonable for trademark infringement case). The time entries submitted with the motion demonstrate that the proffered hours were reasonably expended on this case. (*See* Doc. 15-1 at 6-12.) Likewise, the Court finds the costs of $1,172.15 to be reasonable. (*Id.* at 14.); *see OSN Labs*, LLC, 2024 WL 2832437 *4 (finding costs of $2,000 reasonable in trademark case).

The Court finds that DriveTime's request for attorneys' fees is justified under the

lodestar calculation. The court will therefore grant DriveTime's application for attorneys' fees in the amount requested.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** entering a judgment in favor of Plaintiff that Plaintiff's DRIVETIME Mark has been and continues to be infringed by Defendant in violation of 15 U.S.C. § 1114(1) and such infringement constitutes federal unfair competition in violation of 15 U.S.C. § 1125(a).

**IT IS FURTHER ORDERED** that:

1. Defaulting Defendant, its officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from:

   a.  using the DRIVETIME Trademarks or any reproductions, counterfeit copies, or colorable imitations in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine DriveTime product or not authorized by DriveTime to be sold in connection with the DRIVETIME Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine DriveTime product or any other product produced by DriveTime, that is not DriveTime's or not produced under the authorization, control, or supervision of DriveTime and approved by DriveTime for sale under the DRIVETIME Trademarks;

   c.  committing any acts calculated to cause consumers to believe that Defaulting Defendant's products are those sold under the authorization, control, or supervision of DriveTime, or are sponsored by, approved by, or otherwise connected with DriveTime; and

    d.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for DriveTime, nor authorized by DriveTime to be sold or offered for sale, and which bear any of DriveTime's trademarks, including the DRIVETIME Trademarks, or any reproductions, counterfeit copies or colorable limitations.

2.  Defaulting Defendant and any third party with actual notice of this Order who is providing services for the Defaulting Defendant, or in connection with any of the Defaulting Defendant's auctions or online marketplaces shall within seven (7) calendar days of receipt of this Order cease:

    a.  using, linking to, transferring, selling, exercising control over, or otherwise owning any auction or online marketplace account, or any other online marketplace account that is being used to sell or is the means by which Defaulting Defendant could continue to sell infringing goods using the DRIVETIME Trademarks; and

    b.  operating and/or hosting websites that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the DRIVETIME Trademarks or any reproductions, counterfeit copies or colorable imitations thereof that is not a genuine DriveTime product or not authorized by DriveTime to be sold in connection with the DRIVETIME Trademarks.

3.  Upon DriveTime's request, those with notice of this Order, shall within seven (7) calendar days after receipt of such notice, disable and cease displaying any advertisements used by or associated with Defaulting Defendant in connection with the sale of infringing goods using the DRIVETIME Trademarks.

**IT IS FURTHER ORDERED** that Plaintiff is awarded attorneys fees in the amount of $21,648.35, plus costs in the amount of $1,172.15, against Defendant. Interest

will accrue at the statutory rate from the date of this Order until fully paid.

**IT IS FINALLY ORDERED** directing the Clerk of Court to enter a final judgment consistent with this Order and close this case.

Dated this 24th day of July, 2026.

Michael T. Liburdi
United States District Judge